Office of Disciplinary Counsel v. Ball.
[Cite as Disciplinary Counsel v. Ball (1993),    Ohio St.3d
.]
Attorneys at law -- Misconduct -- Six-month suspension --
    Neglect of entrusted legal matters.
    (No. 93-388 -- Submitted May 25, 1993 -- Decided September
22, 1993.)
    On Certified Report by the Board of Commissioners on
Grievances and Discipline of the Supreme Court, No. 91-34.
    On October 21, 1991, the Office of Disciplinary Counsel,
relator, filed a complaint with the Board of Commissioners on
Grievances and Discipline of the Supreme Court ("board"),
charging, inter alia, that respondent, Claire M. Ball, Jr., of
Athens, Ohio, Attorney Registration No. 0020459, neglected
legal matters entrusted to him in violation of DR 6-101(A)(3).
The complaint alleged ten separate counts of professional
misconduct by respondent in two distinct categories.  The first
category of allegations concerned respondent's consistent
failure to comply with deadlines imposed by courts and taxing
authorities in connection with his handling of probate and
guardianship matters.  The second category of allegations
concerned the activities of Sue Haggerty, a nonlegal employee
of respondent, who, over the course of ten years,
misappropriated in excess of $200,000 from estate and
guardianship accounts for which respondent was attorney or
fiduciary.  Haggerty has pled guilty to five counts of grand
theft in violation of R.C. 2913.02(A)(2).  Criminal charges
were not filed against respondent.
    The matter was heard upon stipulations and testimony by a
panel of the board on June 26, 1992.
    Respondent began the practice of law in 1968 in Athens,
Ohio.  In 1973, respondent hired Sue Haggerty as his legal
secretary.  Commencing with the withdrawal of respondent's
partner from the firm in 1978, Haggerty began assuming
considerable responsibility in connection with respondent's
probate practice in addition to her secretarial duties.
Haggerty essentially served as a legal assistant or
paraprofessional to respondent as well as a bookkeeper, where
she was given authority to sign checks for disbursements from
the office account and client's trust accounts.
    According to her deposition testimony, Haggerty's workload
intensified and she became delinquent in filing the necessary
documents and papers in probate and guardianship matters.  To
conceal her inactivity on these matters and others assigned to
her, Haggerty diverted office mail from respondent that had
reference to the uncompleted work.  Although Haggerty diverted
and concealed information from respondent, it appears she never
destroyed letters from the court or clients which would
indicate any delay.  On the contrary, she appropriately placed
into the office files all documents that passed through her
desk.  Respondent has denied any knowledge of these
delinquencies.
    In addition to the above-mentioned misconduct, the
misappropriation by Haggerty of more than $200,000 from estate
and guardianship accounts for which respondent was the attorney
or fiduciary forms the basis of the second category of charges
brought against respondent.  In all circumstances of

misappropriated funds, Haggerty had full authority to make deposits and withdrawals to respondent's trust account and office account and in some instances to his guardian and estate accounts. Respondent paid little or no attention to these financial matters, neglecting to review a single statement on any of his probate accounts, his law account, his trust, or the C.J.S. Properties account of which he and Haggerty were partners. In the most striking instance, Haggerty wrote a check from a certain estate for $10,000 to the "Ball for State Senate" campaign account. Respondent denied knowledge of any misappropriations, which denial was corroborated by the testimony of Haggerty at her criminal trial and her deposition in this disciplinary matter.

This case came to the attention of the relator as a result of an inquiry on the status of one of respondent's probate matters which was over one year delinquent. After being contacted by relator on January 21, 1991, respondent reviewed his accounts and soon discovered the numerous delinquencies and the large amount of misappropriated funds. Respondent immediately fired Haggerty and paid all misappropriated accounts with interest.

A majority of the panel found a violation by respondent of DR 6-101(A)(3) and EC 6-4, and recommended a public reprimand.

The board concurred in the panel's finding that respondent's conduct violated DR 6-101(A)(3). However, the board recommended a six-month suspension of respondent from the practice of law in Ohio.

J. Warren Bettis, Disciplinary Counsel, and Dianna L. Chesley, Assistant Disciplinary Counsel, for relator.

Charles W. Kettlewell, for respondent.

Moyer, C.J. DR 6-101(A)(3) states that "A lawyer shall not *** neglect a legal matter entrusted to him." This court has previously interpreted this rule to warrant sanction when an attorney neglects to file necessary legal papers for clients and answer clients' inquiries, fails to prosecute actions on a client's behalf, and mismanages probate proceedings and guardianships. Cincinnati Bar Assn. v. Ebel (1983), 5 Ohio St.3d 145, 5 OBR 277, 449 N.E.2d 456; Disciplinary Counsel v. Giegel (1990), 56 Ohio St.3d 58, 564 N.E.2d 84; Disciplinary Counsel v. Oglesby (1992), 64 Ohio St.3d 39, 591 N.E.2d 1214. Neglect of this nature warrants disciplinary action contingent upon the severity and pervasiveness of the conduct. The case at bar concerns the vicarious responsibility of a lawyer for the conduct of the nonlawyer employee and is of first impression in this state.

As the record demonstrates, respondent relinquished significant aspects of his probate practice to Haggerty and failed to set up any safeguards to ensure proper administration of the matters entrusted to him by clients. Delegation of work to nonlawyers is essential to the efficient operation of any law office. But, delegation of duties cannot be tantamount to the relinquishment of responsibility by the lawyer. Supervision is critical in order that the interests of clients are effectively safeguarded. (See EC 6-4: "Having undertaken representation, a lawyer should use proper care to safeguard

the interests of his client.")  It is respondent's total failure to supervise any work done by his nonlawyer employee which is the gravamen of this case.

Respondent argues that, under ABA Model Rules 5.1 and 5.3, a lawyer's vicarious responsibility in a disciplinary proceeding is limited to those situations where the lawyer orders or with knowledge ratifies, or fails to take reasonable remedial action upon learning of, the employee's wrongful acts.1  We disagree.  The Model Rules do not condone respondent's conduct.  In fact, Model Rules 5.3(a) and (b) clearly indicate that it is a lawyer's duty to establish a system of office procedure that ensures delegated legal duties are completed properly:

"(a) a partner in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the person's conduct is compatible with the professional obligations of the lawyer;

"(b) a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer."  (Emphasis added.)

The facts of this case do not reveal an elaborate scheme by Haggerty to secrete funds and conceal her conduct from respondent.  Haggerty was totally conspicuous in her criminal conduct.  Respondent needed only to review his files, his trust accounts, his campaign account, C.J.S. Properties files, or heed the warnings by the court concerning the neglect of numerous files in order to be alerted to the misconduct of his secretary.  Respondent cannot rely on the high degree of competence Haggerty displayed over the years and the trust he developed in her to excuse his failure to provide competent counsel to his clients and guard funds over which he was a fiduciary.  Respondent's nonfeasance over a ten-year period was the necessary element which facilitated Haggerty's criminal acts.  As such, the lack of any semblance of supervisory control over the work delegated by respondent to Haggerty constitutes neglect of legal duties entrusted to respondent in ten separate legal matters in violation of DR 6-101(A)(3).

Therefore, this court concurs in the board's finding and in its recommendation, and orders that respondent he suspended from the practice of law in this state for a period of six months.

Costs taxed to respondent.

Judgment accordingly.


A.W. Sweeney, Douglas, Resnick and F.E. Sweeney, JJ., concur.

Wright and Pfeifer, JJ., dissent and would issue a public repirmand only.

FOOTNOTE:

1    The specific provisions to which respondent makes reference provide as follows:

"Rule 5.1

"Responsibilities of a Partner or Supervisory Lawyer:

"***

"(c) A lawyer shall be responsible for another lawyer's violation of the Rules of Professional Conduct if:

"(1) the lawyer orders or, with knowledge of the specific conduct, ratifies the conduct involved; or

"(2) the lawyer is a partner in the law firm in which the other lawyer practices, or has direct supervisory authority over the other lawyer, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action."

"Rule 5.3

"Responsibilities Regarding Nonlawyer Assistants

"***

"(c) [A] lawyer shall be responsible for conduct of such a person [nonlawyer] that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer if:

"(1) the lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved; or

"(2) the lawyer is a partner in the law firm in which the person is employed, or has direct supervisory authority over the person, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action."